**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                   :
GIANFRANCO CAPRIO,                 :
                                   :    CIVIL ACTION NO. 04-5805 (MLC)
        Plaintiff,                 :
                                   :    MEMORANDUM OPINION
        v.                         :
                                   :
NORMAN Y. MINETA,                  :
                                   :
        Defendant.                 :
_____:
```

**COOPER, District Judge**

Plaintiff, Gianfranco Caprio, claims defendant, Norman Y. Mineta, Secretary of the Department of Transportation, violated the Rehabilitation Act ("Act") by (1) discriminating against him based upon his disability, (2) subjecting him to a hostile work environment based on his disability, and (3) retaliating against him for engaging in protected activity. (Compl., at 2-5.) Defendant moves for summary judgment in his favor pursuant to Federal Rule of Civil Procedure ("Rule") 56. (Dkt. entry no. 15.) Plaintiff opposes the motion. (Dkt. entry no. 20.) For the reasons stated herein, the Court will grant the motion.

BACKGROUND

Plaintiff, who works for defendant as an air transportation systems specialist in Newark, New Jersey ("Newark site"), injured his knee while working on January 13, 1999. (Def. Stmt. Facts, at ¶ 1; Compl., at ¶ 7; Caprio Decl., at ¶ 1.) The injury was diagnosed as a medial-meniscus tear, and plaintiff underwent

surgery on April 14, 1999.  (Compl., at ¶ 7; Def. Stmt. Facts, at ¶ 16.)  Plaintiff's doctor informed defendant that plaintiff could return to work on full duty on May 31, 1999, but the doctor subsequently moved plaintiff's return date back to June 29, 1999, as plaintiff had a "heavy labor job."  (Def. Stmt. Facts, at ¶¶ 19-20, Def. Ex. 4.)  Plaintiff, however, informed his doctor on November 5, 1999, that he suffered another injury to his knee when he fell at a friend's house.  (Compl., at ¶ 7; Def. Stmt. Facts, at ¶¶ 23-25.)  Plaintiff had further surgery on March 1, 2000 to repair a tear in his medial meniscus.  (Compl., at ¶ 7.)

Plaintiff was out of work from January 13, 1999 until July 6, 2000, due to his injuries, and received workers compensation during his absence.  (Id.; Def. Stmt. Facts, at ¶ 10.)  During 1999, plaintiff visited the Newark site on "at least two occasions", during which he was "on crutches and clearly limited in his ability to stand and walk", and during his visits in 2000 "was able to ambulate only with the assistance of crutches and a cane."  (Compl., at ¶ 7.)  During his later visits to the Newark site, plaintiff asserts "management observed him ambulating with the assistance of a cane."  (Id.)

Plaintiff received a letter from defendant dated June 22, 2000, stating that defendant proposed to remove him from his position as of one month from receipt of the letter because plaintiff was unavailable for duty.  (Compl., at ¶ 7, Pl. Ex. 5

2

(admitted at 6-04-07 oral arg.).)  The letter further stated that defendant had informed plaintiff by letter dated May 17, 2000, that he was to provide defendant with a date for his return to duty, and that defendant was in receipt of plaintiff's response in the form of a letter from his physician stating he was unable to work at that time.  (Pl. Ex. 5.)

Plaintiff returned to work in a limited duty capacity on July 6, 2000, and the restrictions imposed by his doctor included no climbing towers and limited bending and squatting.  (Compl., at ¶ 7; Def. Stmt. Facts, at ¶ 27.)  Plaintiff had a new supervisor, Raguey Manseour, who had started in that position while plaintiff was on leave.  (Def. Stmt. Facts, at ¶ 32.) Plaintiff was assigned to sedentary work at defendant's Airway Facilities Division in Garden City, Long Island ("Liberty SMO"), which required plaintiff to travel an additional four hours daily.  (Compl., at ¶ 7; Def. Stmt. Facts, at ¶ 52.)  Plaintiff returned to work with no restrictions at the Newark site on August 21, 2000.  (Def. Stmt. Facts, at ¶ 30.)

Plaintiff sought EEOC counseling on October 11, 2000, which resulted in plaintiff filing his first EEOC charge on January 4, 2001.  (Dkt. entry no. 27, Ex. B; Def. Stmt. Facts, ¶¶ 2-3.)  The focus of the charge insofar as related to his disability was his transfer to the Liberty SMO facility, and the lack of cooperation and administrative assistance following his injury on January 13,

1999.  (Compl., at ¶ 7; dkt. entry no. 27, Ex. B.)  As to his transfer, plaintiff alleged that "[n]one of my predecessors [at the Newark site] that have served restricted duties, due to physical disabilities or other infractions, with less of a staff than now, have had to endure this unwarranted preferential treatment."  (Dkt. entry no. 27, Ex. B.)  The EEOC dismissed as untimely plaintiff's allegation that he suffered discrimination based on his disability when he was told to report to Liberty SMO on July 13, 2000.  (Def. Stmt. Facts, at ¶ 5; Def. Ex. 3.)  The EEOC also dismissed plaintiff's claims of reprisal on the ground that he had not engaged in protected activity before filing that EEOC charge.  (Id. at ¶ 6.)  But the EEOC did accept for investigation plaintiff's allegations of discrimination and harassment based upon his disability in relation to his administrative difficulties in 1999 and 2000.  (Def. Ex. 3.)

Plaintiff filed a second EEOC charge on April 15, 2002. (Compl., at ¶ 8; dkt. entry no. 27, Ex. C.)  Plaintiff alleged that defendant "engaged in a continuing pattern and course of conduct of harassment, discrimination on the basis of my handicap (42% disability - left extremities) and reprisal for my prior EEO activity."  (Dkt. entry no. 27, Ex. C.)  Plaintiff alleged the following examples of "discriminatory acts concern[ing] issues of leave, overtime, [] training, workplace intimidation, intrusion into [his] privacy, hostile work environment and harassment":

4

(a) interfering in the processing and the scheduling of [plaintiff's] ID renewal application with the Port Authority [] when [plaintiff's] supervisor [Manseour] contacted the Port Authority without plaintiff's permission or knowledge to reschedule an appointment that plaintiff personally had made for February 22, 2002;

(b) disapproving a request for annual leave for February 14, 2002 to permit [plaintiff] to attend a scheduled hearing at the Department of Veterans Affairs, and by refusing to provide plaintiff with written justification for his disapproval;

(c) disapproving a request for 'in lieu of holiday' leave for February 21, 2002;

(d) providing [plaintiff] with misinformation concerning the processing of his renewal ID application with the Port Authority, by refusing to sign plaintiff's renewal application in all appropriate places as the 'issuing official', even though plaintiff had requested his supervisor to sign on three separate occasions, by refusing to allow plaintiff to pick up the renewal application from either the supervisor's secretary or the assistant supervisor, and, generally, by engaging in harassing conduct;

(e) rescheduling plaintiff's appointment with the Port Authority from February 18, 2002 to February 21 to justify the supervisor's disapproval of plaintiff's request for in lieu leave for February 21, 2002;

(f) engaging in unprofessional and confrontational conduct, during a meeting concerning overtime in conjunction with [plaintiff's] scheduled shift, when the supervisor stood up, shouted that the meeting was over and demanded that plaintiff leave the supervisor's office.  This occurred on September 24, 2001;

(g) repeatedly rescheduling five week Mode-S training at Oklahoma City shortly after [plaintiff's] return from a nine week resident training course in Oklahoma City - with the knowledge, supported by medical documentation, that plaintiff's wife had a medical problem which required plaintiff's presence at home;

(h) disapproving [plaintiff's] request to attend a scheduled meeting on 3/28/02 with his EEO counselor and by not providing [plaintiff] with written justification for his disapproval;

(i) delaying the supervisor's approval decision on a request for an 'in lieu of date' so that [plaintiff]

5

could attend a preconsultation on a VA hearing with a representative of the American Legion on January 24, 2002;

(j) engaging in workplace intimidation in threatening to take disciplinary action against [plaintiff] for not obtaining prior approval for leave for January 24, 2002, when [plaintiff] made such a leave request;

(l) refusing to respond to emails sent by third parties concerning [plaintiff's] leave request for January 24, 2002;

(m) prematurely terminating plaintiff's OJT and by threatening [plaintiff] with taking a performance examination on the radar (ASR-9), knowing that the supervisor violated FAA rules and regulations and the labor management agreement by failing to provide [plaintiff] with a certified instructor and providing [plaintiff] with less than the minimum number of hours of formal OJT; and

(n) refusing to obtain form 3330-42, used to notify [plaintiff's] qualification for a TID position (FV-2101-I) vacancy announcement AEA-AAF-01-34-55740 from AEA-14 before attending a peer selection panel.

(Compl., at ¶ 8 ("(k)" missing in original).)

The Administrative Law Judge consolidated plaintiff's EEOC charges, and issued a decision granting summary disposition in favor of defendant.  (Id. at ¶¶ 9-11; Caprio Decl., Ex. 3.)  The EEOC affirmed that decision on June 16, 2004.  (Def. Stmt. Facts, at ¶ 62.)  Plaintiff filed a timely complaint in this Court on November 22, 2004.  (Dkt. entry no. 1.)

## DISCUSSION

### I.   Standard of Review for Summary Judgment

Rule 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

6

the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  The party moving for summary judgment bears the initial burden of showing that there is no genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant has met this prima facie burden, the non-movant "must set forth specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).  A non-movant must present actual evidence that raises a genuine issue of material fact and may not rely on mere allegations.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable to the non-movant when deciding a summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  At the summary judgment stage, the Court's role is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson, 477 U.S. at 249.  Under this standard, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient [to defeat a Rule 56© motion]; there must be evidence on which the jury could reasonably find for the [non-movant]."  Id. at 252.  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."
<u>Id.</u> at 247-48 (emphasis in original).  A fact is material only if
it might affect the action's outcome under governing law.  <u>Id.</u> at
248.  "[T]here is no issue for trial unless there is sufficient
evidence favoring the nonmoving party for a jury to return a
verdict for that party.  If the evidence is merely colorable, or
is not significantly probative, summary judgment may be granted."
<u>Id.</u> at 249-50 (internal citations omitted).

## II.  Rehabilitation Act Claims

The Act applies to federal employers and employers receiving
federal funding, and prohibits discrimination against those with
disabilities in matters of hiring, placement, or advancement.
<u>Shiring v. Runyon</u>, 90 F.3d 827, 830-31 (3d Cir. 1996); <u>Sever v.
Henderson</u>, 220 Fed.Appx. 159, 161 (3d Cir. 2007).  The Act
"provides the appropriate pathways by which a plaintiff may
pursue" a claim under the Act by "adopting the procedures set
forth in Title VII."  <u>Wilson v. MVM Inc.</u>, 475 F.3d 166, 173 (3d
Cir. 2007) (citing 29 U.S.C. § 794a(a)(1)).

### A.  Scope of Plaintiff's Claims

"The incorporation of [Title VII into the Act] includes the
incorporation of the exhaustion of administrative remedies."
<u>Wilson</u>, 475 F.3d at 173.  Thus, a plaintiff in an action under
the Act must file an administrative charge with the EEOC, and
only after exhausting administrative remedies may "seek to

8

vindicate his rights in front of a judge and jury." Id. at 174; see 42 U.S.C. § 2000e-5.  But the Act's exhaustion requirement is prudential and thus "can be bypassed under certain circumstances, including waiver, estoppel, tolling or futility."  Wilson, 475 F.3d at 174; Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (noting "time period for filing a charge is subject to equitable doctrines").  "Even prudential exhaustion requirements will be excused in only a narrow set of circumstances."  Wilson, 475 F.3d at 175.

A plaintiff, to properly allege a claim involving a discrete discriminatory or retaliatory act, must file the EEOC charge within the appropriate period proscribed by Title VII.  Morgan, 536 U.S. at 117.[1]  Thus, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  Id. at 113.  Discrete acts are "easy to identify" and include "acts such as termination, failure to promote, denial of transfer, or refusal to hire."  Id. at 114; see O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006) (adding "wrongful suspension, wrongful discipline, denial of training, wrongful accusation" to "non-exhaustive list of discrete

_____

[1]  "In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days."  Morgan, 536 U.S. at 109.

acts"). "[T]he time for filing a charge of employment discrimination with the EEOC begins when the discriminatory act occurs." Ledbetter v. Goodyear Tire & Rubber Co., 127 S.Ct. 2162, 2165 (2007). "[T]his rule applies to any discrete act of discrimination." Id. (cites and quotes omitted).

"Hostile environment claims are different in kind from discrete acts" and therefore "some of the component acts of the hostile work environment [may] fall outside the statutory time period." Morgan, 536 U.S. at 115, 117. Under Morgan, "acts which are not individually actionable but may be aggregated to make out a hostile work environment claim . . . can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period." O'Connor, 440 F.3d at 126. Thus, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court." Ledbetter, 127 S.Ct. at 2175 n.7 (quoting Morgan, 536 U.S. at 117).

The Court concludes that plaintiff's transfer to Liberty SMO is a discrete act "squarely within the bounds of Morgan and O'Connor", and thus his claims of disparate treatment and retaliation related thereto must be dismissed, as he failed to contact the EEOC office concerning this discrete act within forty-five days of its occurrence pursuant to 29 C.F.R. § 1614.105(a)(1). Garrett v. U.S. Dep't of Veterans Affairs, No.

05-1164, 2007 WL 1875535, at *5 (D.N.J. June 28, 2007)
(dismissing claim alleging, <u>inter</u> <u>alia</u>, improper transfer, as (1)
it concerned discrete act of discrimination, and (2) plaintiff
failed to exhaust administrative remedies).  The transfer,
therefore, is only relevant to demonstrate the alleged pattern of
on-going, continuous discrimination that is the subject of
plaintiff's hostile work environment claim, and is not relevant
to his separate claim of disparate treatment.[2]

Plaintiff argues that the date on which he first engaged in
protected activity should be calculated from September 13, 2000 —
when he was made aware by a co-worker that other employees of
defendant with temporary impairments allegedly received different
treatment than plaintiff — and not July 13, 2000, when he was
transferred to Liberty SMO.  (Pl. Br., at 11.)  This argument,
which in effect advocates for application of the discovery rule
to his administrative exhaustion requirement, is without merit.
See <u>Ledbetter</u>, 127 S.Ct. at 2165 ("time for filing a charge of
employment discrimination with the EEOC begins when the
discriminatory act occurs"), <u>id.</u> at 2177 n.10 (noting Supreme
Court has "previously declined to address whether Title VII suits
are amendable to a discovery rule" and holding the Court had "no

---

[2]  The Court notes plaintiff's transfer to Liberty SMO is
irrelevant to the Court's disposition of the disparate treatment
and retaliation claims, as the Court disposes of the claims on
the ground that plaintiff is not disabled and thus does not reach
consideration of the alleged adverse employment actions.

11

occasion to address this issue"). To the extent plaintiff's argument advocates application of equitable tolling to save his claim regarding his transfer to Liberty SMO, he fails to demonstrate that he (1) was actively misled by defendant, (2) has "in some extraordinary way" been prevented from asserting his rights, or (3) timely asserted his rights in some other forum. United States v. Midgley, 142 F.3d 174, 179 (3d Cir. 1998).

**B.   Disparate Treatment**

Claims of discrimination under the Act are governed by the standards of the American with Disabilities Act ("ADA"). Sever, 220 Fed.Appx. at 161. "The McDonnell Douglass Title VII burden shifting rules apply to claims of discriminatory treatment under the ADA" and thus apply to claims of discrimination under the Act also. Walton v. Mental Health Ass'n S.E. Pa., 168 F.3d 661, 667-68 (3d Cir. 1999). To establish a prima facie case of employment discrimination under the Act, plaintiff must demonstrate that he (1) has a disability, (2) is otherwise qualified to perform the essential functions of the job, and (3) has suffered an adverse employment action because of his disability. Sever, 220 Fed.Appx. at 161; Shiring, 90 F.3d at 831-23; see Williams v. Phila. Hous. Auth. Pol. Dep't, 380 F.3d 751, 761 (3d Cir. 2004) (prima facie case of discrimination under ADA).

If the employee shows a prima facie case, then the burden shifts to the employer to "articulate some legitimate, non-

12

discriminatory reason" for the adverse action.  <u>Walton</u>, 168 F.3d at 668.  If the employer meets this relatively light burden, to avoid summary judgment the plaintiff must "point to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  <u>Id.</u>

Plaintiff's discrimination claims fail because he has not demonstrated that he is disabled within the meaning of the Act. "Disability" under the ADA and the Act is defined as: (A) a physical or mental impairment that substantially limits one or more of an individual's major life activities, (B) a record of such impairment, or (C) being regarded as having such an impairment.  <u>Sever</u>, 220 Fed.Appx. at 161 (articulating ADA definition of disability); <u>Dorn v. Potter</u>, 191 F.Supp.2d 612, 621 (W.D. Pa. 2002) (stating same definition of disability under Act).

"Merely having an impairment does not make one disabled" and plaintiff must "demonstrate that the impairment limits a major life activity."  <u>Toyota Mfg. v. Williams</u>, 534 U.S. 184, 195 (2002). Major life activities under the Act include "walking, seeing, hearing."  <u>Id.</u> (quoting 45 C.F.R. § 84.3(j)(2)(ii)).  In determining whether the individual is substantially limited, the Court should consider: "[t]he nature and severity of the

impairment, [t]he duration or expected duration of the
impairment; and [t]he permanent or long-term impact, or the
expected permanent or long-term impact of or resulting from the
impairment." Id. (cites and quote omitted). These terms "need
to be interpreted strictly to create a demanding standard for
qualifying as disabled." Id. at 197.

Plaintiff argues that "he is an individual with a disability,
because the agency has regarded him as having a disability." (Pl.
Br., at 15.) There are "two apparent ways in which individuals
may fall within the statutory definition" of being regarded as
disabled: "(1) a covered entity mistakenly believes that a person
has a physical impairment that substantially limits one or more
major life activities, or (2) a covered entity mistakenly
believes that an actual, nonlimiting impairment substantially
limits one or more major life activities." Sutton v. United Air
Lines, 527 U.S. 471, 489 (1999). "In both cases, it is necessary
that a covered entity entertain misconceptions about the
individual . . . . These misperceptions often result from
stereotypic assumptions not truly indicative of . . . individual
ability." Id. (cites and quotes omitted).

Although plaintiff limits the argument in his brief to being
regarded as disabled and not actually disabled, the Court will
briefly address whether plaintiff is actually disabled because he
asserted in the complaint that he is actually disabled due to "the

14

orthopedic impairment to his left knee."  (Compl., at ¶¶ 6, 17.)
But Plaintiff advances no argument in his brief as to how he is
actually disabled, other than mentioning the workers compensation
finding that he suffers from a 42% handicap in his left knee.
(Pl. Br., at 4.)  "[A] particular diagnosis, no matter how severe
[], standing alone, is not sufficient to establish 'disability.'"
Tice v. Centre Area Transp. Auth., 247 F.3d 506, 513 n.5 (3d Cir.
2001).  Plaintiff cannot establish that he was disabled because
he presents no evidence, or even any argument, to "demonstrate
that the impairment limits a major life activity" such as walking
or working.  Toyota Mfg., 534 U.S. at 195.

     Plaintiff's argument that he was regarded as disabled by
defendant is unsupported by the record.  Plaintiff's argues that
his supervisors saw him walking with a cane when he visited the
Newark site after his injury but before returning to duty.  (Pl.
Br., at 15; Compl., at ¶ 7.)  Plaintiff does not explain either
(1) what impairment defendant mistakenly believes that he had, or
(2) how defendant was mistaken to believe that plaintiff's actual
knee impairment substantially limited one or more of his major
life activities.  Sutton, 527 U.S. at 489.  Plaintiff cannot
argue he falls into the first part of the test for regarded as
disabled because he argues he actually did have an impairment.
Plaintiff does not fall under the second part either, however,
because he does not argue that defendant was mistaken about how

his knee injury actually affected his major life activities of walking or working.

Plaintiff further fails to demonstrate that defendant "exclude[d] plaintiff from an entire class of jobs." <u>Taylor v. Pathmark Stores, Inc.</u>, 177 F.3d 180, 191 (3d Cir. 1999).  Even if the Court were to consider plaintiff's transfer as evidence of his being regarded as disabled despite this claim being barred for failure to exhaust, <u>see</u> <u>supra</u>, the Court would reach the same conclusion.  The record demonstrates that when plaintiff returned to work in a limited duty capacity on July 6, 2000, the defendant found it necessary to transfer him to "desk duty" at Liberty SMO based upon plaintiff's own doctor's restrictions which included no climbing towers and limited bending and squatting.  (Compl., at ¶ 7; Def. Stmt. Facts, at ¶ 27.)

The record also demonstrates that defendant did not make its decisions with regard to plaintiff based on a "misconception" stemming from disability stereotypes.  <u>Sutton</u>, 527 U.S. at 489.  "An employer who simply, and erroneously, believes that a person is incapable of performing a particular job will not be liable" for regarding the employee as disabled.  <u>Taylor</u>, 177 F.3d at 192.  "Liability attaches only to a mistake that causes the employer to perceive the employee as disabled." <u>Id.</u>  Manseour, the union official, and the program specialist at the Newark site all denied knowing that plaintiff had any disability.  (Def. Stmt. Facts, at ¶¶ 33-36; Def. Ex. 8-F.)  Plaintiff's vague allegations

16

that his supervisors observed him walking with a cane and the fact that he was labeled with a 42% disability in his left knee does not demonstrate that he was substantially limited in a major life activity and thus disabled within the meaning of the Act.

The Court finds that a reasonable juror in this case could not reasonably conclude that plaintiff was disabled or regarded as disabled under the Act.  Thus, even viewing the facts in the light most favorable to plaintiff, no genuine issues of material fact remain as to the circumstances surrounding the defendant's conduct towards plaintiff from which a reasonable jury could infer invidious discrimination.

###   C.   Hostile Work Environment

To establish a prima facie hostile work environment claim based on disability, plaintiff must demonstrate that: (1) he is a qualified individual with a disability; (2) he was subject to harassment; (3) the harassment was based on his disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment; and (5) defendant knew or should have known of the harassment and failed to take prompt effective remedial action.  Walton, 168 F.3d at 667.  Plaintiff cannot establish a prima facie hostile work environment claim because he has failed to establish that he has a disability. Dorn, 191 F.Supp.2d at 621 n.3 (noting "plaintiff must also show

that he had a disability to proceed under his hostile work environment theory").

Even if plaintiff had established that he has a disability under the Act, he would still be unable to establish a prima facie case of hostile work environment because he has not demonstrated that the alleged harassment was based on his alleged disability.  The incidents outlined by plaintiff in his EEOC charges show nothing more than a poor relationship between plaintiff and his supervisor, and plaintiff has not asserted any facts that would allow a jury to conclude that Manseour harassed him because of his disability.  See Walton, 168 F.3d at 667 (granting summary judgment in favor of employer and noting fact that supervisor's behavior towards plaintiff was offensive did not indicate that it was based on his disability).

### D.   Retaliation

To establish a prima facie case of retaliation, plaintiff must demonstrate that (1) he engaged in protected activity; (2) defendant took an adverse employment action against him either after or contemporaneous with his protected activity; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action.  Moore v. City of Phila., 461 F.3d 331, 340 (3d Cir. 2006) (cites and quotes omitted) (Title VII); Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000) (ADA).

18

As to the first part of the test, the Court concludes plaintiff engaged in protected activity when he entered EEOC counseling and filed two EEOC charges dated January 4, 2001, and April 15, 2002.  (Dkt. entry no. 27, Exs. B&C.)  The Court will not consider any allegations of retaliation asserted in plaintiff's first charge, as he did not engage in any protected activity prior to his first EEOC charge.

As to the second part of the test, plaintiff must show that a reasonable employee would have found the allegedly retaliatory actions "materially adverse", in that they "might have dissuaded a reasonable worker form making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2415 (2006).  "[P]etty slights, minor annoyances, and simple lack of good manners" are normally not sufficient to deter a reasonable person."  Id.  Plaintiff's second EEOC charge alleges defendant, inter alia, interfered with his training and registration schedules and procedures with no justification, denied standard vacation and leave requests, and either refused or did not promptly sign papers necessary for plaintiff to apply for vacancies or promotions. (Compl., at ¶ 8.)  Viewing these actions in a light most favorable to plaintiff, the Court concludes that a reasonable jury could find they were "materially adverse" insofar as they could have dissuaded a reasonable worker from making a charge of discrimination.

19

But Plaintiff is unable to establish the third part of a prima facie case of retaliation, as he cannot show "a causal connection between the plaintiff's opposition to, or participation in proceedings against, unlawful discrimination and an action that might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Moore, 461 F.3d at 342. "This third element identifies what harassment, if any, a reasonable jury could link to a retaliatory animus. . . .  The ultimate question in any case is an intent to retaliate vel non." Id. (quotes and cites omitted).  Plaintiff provides no direct or circumstantial evidence that defendant exhibited hostility toward plaintiff because of his protected activity.  See Shaner, 204 F.3d at 502 (granting summary judgment to employer on retaliation claim where plaintiff had no direct evidence that hostility was based on protected activity).  Temporal proximity between the protected activity and allegedly retaliatory conduct may be relevant, but the temporal proximity here is not unusually suggestive, and timing alone is rarely sufficient to establish causation.  Weston v. Pa., 251 F.3d 420, 431 (3d Cir. 2001).

Even if plaintiff were able to establish a prima facie case, the Court further finds that he is unable to rebut defendant's legitimate, nondiscriminatory reasons for each of plaintiff's allegations outlined in the second EEOC charge.  (See Def. Br., at 24-27, Def. Ex. 8.)  Plaintiff offers no argument or evidence

20

(i) that would "cast substantial doubt upon" the defendant's proffered reasons for each of its allegedly adverse actions "by painting them as weak, implausible, contradictory, or incoherent", or (ii) from which a reasonable jury could conclude "that an illegitimate factor more likely than not was a motivating or determinative cause of the adverse employment decision[s]." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).  For all of these reasons, the Court concludes that defendant is also entitled to summary judgment on plaintiff's retaliation claims.

### CONCLUSION

The Court, for the reasons stated supra, will (1) grant the motion for summary judgment in defendant's favor on all of plaintiff's claims, and (2) enter judgment in favor of defendant. The Court will enter an appropriate order and judgment.


   s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

21